United States Court of Appeals,

Eleventh Circuit.

No. 97-8165.

UNITED STATES of America, Plaintiff-Appellee,

v.

James D. HOWLE, a.k.a. "Rockie", Defendant-Appellant.

Feb. 5, 1999.

Appeal from the United States District Court for the Northern District of Georgia. No. 1:96-CR-131-1, Julie E. Carnes, Judge.

Before TJOFLAT and BARKETT, Circuit Judges, and PROPST[*], Senior District Judge.

TJOFLAT, Circuit Judge:

This appeal presents an interesting issue regarding the Sentencing Guidelines—one that we do not reach because the defendant waived the right to appeal his sentence. This appeal is therefore dismissed.

I.

James Howle, the defendant, was the president and majority shareholder of Utility Trailer Center, Inc., a Georgia corporation selling new and used semitrailers. Sales of new semitrailers are, under federal law, subject to a twelve percent excise tax. *See* 26 U.S.C. § 4051(a)(1) (1994). This tax is collected by retailers, who transfer the revenues collected to the Internal Revenue Service on a semimonthly basis. Then, every three months, retailers are required to file a "Quarterly Federal Excise Tax Return" that reports the amount of tax owing to the IRS from sales over the three-month period and the amount actually paid.

---

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

As Howle's business began to face financial difficulties in 1990-91, he decided to use a portion of the excise taxes collected to support business operations. Then, when it came time to file the quarterly returns, Howle underreported his tax liability such that the amount he claimed to owe corresponded with the amount he actually paid. This scheme continued until May 1991, when the IRS decided to conduct a compliance check for Utility Trailer Center. An IRS agent scheduled a meeting with Howle at which Howle was to produce sales invoices, bookkeeping records, and other financial management data. At the meeting, Howle immediately confessed to his deception, explained his scheme to the agent, and showed her the accounting records that reflected the amounts due to the IRS and the actual amounts paid.

Based on the results of the compliance check, the Government commenced criminal proceedings against Howle, and Howle was indicted on five counts of filing false tax returns under penalty of perjury in violation of 26 U.S.C. § 7206(1).[1] Howle then entered into a plea agreement with the Government. Under the agreement, the Government promised to dismiss four of the five counts of the indictment, and to recommend that Howle receive a two-level reduction of his offense level pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. In exchange, Howle promised to plead guilty to count two of the indictment and to cooperate with the IRS in filing corrected tax returns. He also waived the right to appeal his sentence[2] and the right to attack his conviction in any

[1]Section 7206(1) authorizes criminal punishment for anyone who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1) (1994). Howle filed five separate fraudulent quarterly returns; each count was based on one of these returns.

[2]The plea agreement created two exceptions to the "no appeal" rule: Howle could appeal an adjustment of his base offense level for abuse of trust under U.S.S.G. § 3B1.3, and he could appeal an upward departure from the applicable Guidelines range that was imposed pursuant to either U.S.S.G. § 4A1.3 or U.S.S.G. § 5K2.0. Neither of these exceptions is relevant to the sentence that ultimately was imposed.

post-conviction proceeding. After a hearing at which Howle was specifically questioned regarding the waiver of his right to appeal, the plea agreement was accepted by the district court pursuant to Rule 11(e) of the Federal Rules of Criminal Procedure.

Four months after accepting the plea agreement, the district court conducted a sentencing hearing. Under the Sentencing Guidelines in effect at the time of Howle's criminal conduct, his base offense level was 13. *See* United States Sentencing Commission, *Guidelines Manual* §§ 2T1.3, 2T4.1 (Nov. 1, 1989).[3] At the sentencing hearing, the district court granted a downward reduction of two points based on Howle's acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). Howle then moved for a downward departure on the ground that there were mitigating circumstances in this case of a kind not adequately taken into account by the Sentencing Commission in formulating the Guidelines. *See* U.S.S.G. § 5K2.0. Specifically, Howle noted that, unlike the ordinary tax fraud defendant, he fully intended to repay the IRS the money he had withheld.

The district court apparently accepted Howle's assertion that he genuinely intended to repay

---

[3]A convicted defendant's sentence ordinarily is based on the version of the Sentencing Guidelines in effect on the date of sentencing. *See United States v. Bailey,* 123 F.3d 1381, 1403 (11th Cir.1997). This rule does not apply, however, when the sentence mandated under the version in effect on the date of sentencing is more severe than that in effect on the date the crime was committed. *See id.* In such a situation, the Guidelines in effect on the date the crime was committed are used. *See id.*

In this case, the fraudulent tax return in count two (the count to which Howle pled guilty) was filed on July 30, 1990. At that time, the 1989 version of the Guidelines Manual was in force, which established a base offense level for Howle's conduct of 13. *See* U.S.S.G. §§ 2T1.3, 2T4.1. (The filing of fraudulent tax returns was governed at that time by § 2T1.3, which in turn determined the base offense level by reference to the table in § 2T4.1. The table in § 2T4.1 created a base offense level of 13 for tax losses greater than $120,000 and not exceeding $200,000. The tax loss attributable to Howle was stipulated in the plea agreement to be $150,354.47.) In 1993, the guidelines were amended such that the base offense level for Howle's conduct would be 15. *See* United States Sentencing Commission, *Sentencing Guidelines* App. C, amend. 491 (Nov. 1, 1997). Consequently, the district court used the 1989 Guidelines in calculating Howle's sentence.

the IRS, and agreed that such intent to repay made Howle's case different from the ordinary tax evasion case. However, it held that intent to repay is not sufficient under the Guidelines to justify a downward departure from the base offense level for making false statements under penalty of perjury.

In denying Howle's motion for a downward departure, the district court made the following statement:

> I've tried hard to see if I could say that this was outside the heartland. I can't say that it is.... I will say, however, that I don't think I have the power to depart, and by saying that, that means you are allowed to appeal me. And if the Eleventh Circuit disagrees with me and says that I am wrong, I did have the power to depart, then we can come back. I have already indicated I likely, given the discretion, would probably not do prison in this case. I would probably do no more than halfway house....
>
> ....
>
> So, I cannot depart in this case but I invite and welcome an appeal. I will stay the report date so that you can appeal me if you want to....

Neither the Government nor the defendant brought the plea bargain to the court's attention after this statement was made. Following sentencing, Howle filed a timely notice of appeal.

## II.

A plea agreement is, in essence, a contract between the Government and a criminal defendant. Among the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily. *See United States v. Bushert,* 997 F.2d 1343, 1350 (11th Cir.1993). In this case, Howle's waiver was clearly knowing and voluntary—he was specifically questioned by the district court regarding the waiver of his right to appeal. *See United States v. Buchanan,* 131 F.3d 1005, 1008 (11th Cir.1997). The plea agreement is therefore enforceable and would appear to bar this appeal.

Howle contends, however, that his waiver was somehow invalidated by the district court's

statement (set forth above) in which the court strongly encouraged him to appeal his sentence. In order to assess Howle's claim, we must determine the significance of the district court's statement in relation to the plea agreement. There are three possibilities in this regard: The statement either had no effect on the plea agreement, modified the plea agreement, or eliminated the plea agreement.

The statement is most reasonably interpreted as dicta that had no effect on the court's prior acceptance of the plea agreement. The district court, faced with a difficult legal question and having forgotten the details of the plea agreement, mistakenly told the defendant that he had a right to appeal and encouraged him to do so. It was as if the district court had said that the sky is pink—the fact that it was said by the district court did not make it true. Such dicta, although confusing for the defendant, had no effect on the terms of a previously approved plea agreement. *See United States v. Benitez-Zapata,* 131 F.3d 1444, 1446 (11th Cir.1997) (holding that district court's remark at sentencing that "it is your right to appeal from the judgment and sentence within ten days" did not invalidate a previously entered plea agreement in which the defendant had waived his right to appeal).

Alternatively, we could interpret the district court's statement as an attempt to modify the plea agreement by striking the portion of that agreement in which Howle waived his right to appeal. Modification of the terms of a plea agreement is, however, beyond the power of the district court.[4]

---

[4]Howle cites *United States v. Kummer,* 89 F.3d 1536, 1542-44 (11th Cir.1996), and *United States v. Dean,* 80 F.3d 1535, 1538-39 (11th Cir.1996), for the proposition that district courts do, in fact, have the power to modify plea agreements. These cases, however, stand only for the proposition that when a plea agreement includes a promise by the Government to recommend a particular sentence pursuant to Fed.R.Crim.P. 11(e)(1)(B), the district court's refusal to accept that recommendation is permissible and does not constitute a rejection of the entire plea agreement. Such a rejection is not a "modification" in the strict sense, because the defendant is getting exactly that for which he bargained—a recommendation by the Government that his sentence be reduced. The fact that the court rejects the recommendation does not modify the bargain.

*See United States v. Yesil,* 991 F.2d 1527, 1531-32 (11th Cir.1992); *United States v. Ritsema,* 89 F.3d 392, 399 (7th Cir.1996). Such a modification would impermissibly alter the bargain at the heart of the agreement—without the defendant's waiver of his right to appeal, the Government might not have been willing to dismiss four of the five counts contained in the indictment. Having approved the plea agreement, the district court had no more right to change its terms than it would have to change the terms of any other contract. Thus, if the district court's statement was an attempt to modify the plea agreement, it was invalid.

We also note that even if the district court had the authority to modify the plea agreement, its finding that this case presents a difficult legal issue would not be an adequate ground for doing so. A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error.[5] Waiver would be nearly meaningless if it included only those appeals that border on the frivolous. Thus, if district courts were free to strike a defendant's waiver of his right to appeal every time a case presented a difficult legal issue, prosecutors would no longer be willing to give very much in exchange for such a waiver, and the ability of defendants to plea bargain would be hampered. While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.

Finally, we could interpret the statement as an attempt by the district court to retract its previous approval of the plea agreement. Under the Sentencing Guidelines, a court's acceptance or rejection of a plea agreement is not final until after the court has had the opportunity to consider the presentence report, which in this case had not been prepared at the time the plea was entered. *See*

---

[5]In extreme circumstances—for instance, if the district court had sentenced Howle to a public flogging—due process may require that an appeal be heard despite a previous waiver.

U.S.S.G. § 6B1.1(c); *United States v. Kemper,* 908 F.2d 33, 36 (6th Cir.1990). Interpreting the district court's statement as a retraction, however, would read far too much into the statement. A retraction would have given Howle the opportunity to return to his original "not guilty" plea and left the parties free either to negotiate a new agreement or to proceed to trial. By giving the parties neither of these options—and instead entering a sentence and suggesting an immediate appeal—the district court demonstrated that it was not retracting its approval of the plea agreement.[6]

Thus, the plea agreement must stand as written. We will honor that agreement by not reaching the merits of this appeal.

### III.

For the foregoing reasons, the appeal is DISMISSED.

PROPST, Senior District Judge, Specially Concurring:

I concur in the opinion. As a trial judge, I have a problem with obtaining a knowing and understanding waiver of appeal with respect to any potential error I might make at sentencing. This concern is not, however, applicable to a waiver of the right to seek a downward departure.

---

[6]We note that Howle, after the district court suggested that the case involved a difficult legal issue appropriate for appellate review, could have moved to withdraw his guilty plea. *See* Fed.R.Crim.P. 32(e). If the motion were granted, Howle would have regained the right to appeal (and the Government would have regained the right to pursue the other counts in the indictment). Howle did not make such a motion.