[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 28, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12572
Non-Argument Calendar

_____

D. C. Docket No. 04-00334-CR-SLB-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEANGELO D. THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 28, 2006)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Deangelo D. Thomas appeals his convictions and 235-month sentences for assaulting a Deputy United States Marshal and inflicting bodily injury on him with use of a deadly and dangerous weapon and for being a felon in possession of a firearm. Because the district court did not plainly err when it found that Thomas' plea was made knowingly and voluntarily and did not clearly err when it found that he was competent to enter his plea, we affirm his convictions. Thomas' valid appeal waiver forecloses the sentencing issues he raises. Therefore, we dismiss his sentencing appeal.

## I.

In a superseding indictment, Thomas was charged with one count of assault of a Deputy United States Marshal and infliction of bodily injury with use of a deadly and dangerous weapon (an automobile) in violation of 18 U.S.C. § 111(a)(1), (b); two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1); and one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1). Thomas filed a motion for a psychiatric evaluation to determine his mental competency to understand the proceedings against him and to determine whether he was mentally competent at the time of the alleged offense. The magistrate

judge granted that motion and ordered Thomas to be examined by a forensic psychologist, Dr. Kimberly Svec Ackerson.

Dr. Ackerson's report stated that Thomas communicated clearly and was pleasant and respectful during the examination. During the course of the examination, Thomas took a verbal IQ test, and his score was extremely low. Based on discussion and interaction with Thomas, Dr. Ackerson concluded that despite the results of the test, his verbal intellectual function was actually in the low to borderline range, which was consistent with Thomas' statements that he had been enrolled in special education classes when he attended school and that he had limited academic experience.

Dr. Ackerson determined that Thomas had never suffered from a serious mental illness and that he did not meet the criteria for mental retardation. In terms of his competency to stand trial, Dr. Ackerson concluded that Thomas demonstrated a satisfactory understanding of the primary charge against him and that he appeared aware of the seriousness of the situation. She also concluded that Thomas had an adequate understanding of basic court-related procedures and that at the time he committed the alleged offense, he was able to understand right from wrong and could appreciate the nature of his conduct.

3

In a written plea agreement, Thomas pleaded guilty to Count One (assault and infliction of bodily injury) and Count Two (felon in possession of a firearm) of his indictment. The plea agreement contained a sentence appeal waiver, which permitted Thomas to appeal his sentence only on these grounds: (1) a sentence imposed in excess of the statutory maximum; (2) a sentence that constituted an upward departure from the guidelines sentencing range as determined by the court at the time the sentence was imposed; and (3) a claim of ineffective assistance of counsel. Thomas initialed the appeal waiver provision and signed in the signature block for the entire plea agreement. Thomas also initialed a Blakely appeal waiver provision, but during the plea colloquy that provision was struck from the agreement because Thomas did not understand it.

At the plea hearing, the district court initially noted that a psychologist had found Thomas competent and able to assist his defense counsel at trial. When questioned about Thomas' mental ability or competence to enter a plea, Thomas' counsel responded that Thomas understood the basic elements of the charges against him, that he understood he was on trial, and that he had helped to prepare his the case for trial. Defense counsel also stated that Thomas did not understand certain legal concepts pertaining to statutory minimums in relation to the felon in possession of a firearm charge and that he did not understand aspects of the

distinction between the charge for possessing a firearm and for possessing ammunition. Based on that, Thomas' counsel told the court that "there are concepts in trying to reach a plea agreement that my client simply doesn't understand." Plea Colloquy Tran. at 3. He emphasized that Thomas had trouble understanding sentencing issues, but when the court asked whether Thomas was competent to enter a guilty plea, he responded that "[i]f we reached an agreement, I think that he can enter a plea." Id. at 5.

The district court explained to Thomas that no one could guarantee what minimum sentence would apply, but after hearing about Thomas' prior convictions, the court's "best guess" was that a fifteen year minimum sentence probably would apply to him. Id. at 7. The court gave Thomas ten minutes to discuss with his attorney whether he wanted to go to trial or to enter a guilty plea. After conferring with counsel, Thomas said that he wanted to go forward with his guilty plea.

Thomas' counsel explained to the court that he had tried to help Thomas understand a provision in the plea agreement that waived his right to raise on appeal any constitutional challenges to the validity of the sentencing guidelines based on Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). According to counsel, however, because of his low IQ, Thomas could not

understand those sentencing issues.  After discussing the matter with Thomas, the court determined that the <u>Blakely</u> provision should be deleted from the plea agreement, and the government agreed to its removal.  The court questioned Thomas about the other details of the sentence appeal waiver and found that Thomas understood them.  His attorney confirmed that Thomas had knowingly and voluntarily agreed to the appeal waiver as revised.  Thomas had initialed those provisions in the written plea agreement.

The court reiterated to Thomas that he did not have to plead guilty and that he was entitled to a jury trial if he chose not to plead.  Then the following exchange occurred:

> THOMAS:  I'm just trying to make sure that I don't get over 15 years.  That's what I was getting at.
>
> THE COURT:  Well, now, you can't do that, because that's the minimum sentence you're facing is 15 years.  If that enhancement applies, you are facing up to a life sentence.  There's no way [your attorney] can guarantee to you today, and I can't guarantee you today and the government can't guarantee that you'll get not more than 15 years.
>
> Now, what they're recommending in the plea agreement is 15 years.  That's what they're recommending to me, but it's the judge who makes the final decision as to an appropriate sentence.  I don't have to accept the government's recommendation[.]  Do you understand?

6

THOMAS: Yes, ma'am. Let's go to trial. I can't—let's go to trial. I got to go—

THE COURT: Now, wait a minute. You can't talk to your family right here. You can talk to your lawyer now, but you can't talk to your family.

Now, you can talk to your lawyer a little bit more today, but let me just say this: In any plea, there's no way a lawyer can guarantee a defendant the sentence they're going to get. Now the government is recommending a 15 year sentence, but that doesn't mean I have to accept it. That's all I can tell you. I mean, I may accept it. I may not accept it.

Plea Colloquy Tran. at 25–26.

Following that exchange, the court had a sidebar discussion with the attorneys outside of Thomas' presence. The court offered to let Thomas speak with his family if that would help, and the court explained that it did not want to push Thomas, but "[o]bviously, I would rather it be a plea." Id. at 27. Thomas' attorney responded that Thomas was "just scared" because "[h]e's looking at you giving him life." Id. Thomas' attorney also told that court that Thomas was "familiar with a state court plea agreement where you agree on a number of years, and the judge accepts that" but that he was not familiar with sentencing procedures in federal court. Id.

7

After taking the opportunity offered by the court to speak with his family and his attorney, the court asked Thomas if he wanted "to go forward or go to trial?" Id. at 28. Thomas responded, "Go ahead and go forward with it." Id. at 29. The court reminded Thomas that he was "free absolutely to stop this plea and we'll go forward and select a jury to try your case." Id. Thomas acknowledged he understood that, and the court reiterated that although it was likely he would be subject to a fifteen year minimum sentence, there was no guarantee that "that's all you'll get." Id. After being informed of that, Thomas stated that he wanted to enter a plea of guilty. The court asked Thomas if there was anything that prevented him from understanding what was being said during the proceedings. He replied that there was not and explained that he was accustomed to dealing with the state where if you plead, "you get it right then, you know." Id. at 29–30.

Thomas agreed that the government's recitation of the facts was substantially correct, although he stated that "[t]he robbery part" of the factual recitation made him want to change his plea. Id. at 44. The alleged robbery was part of the facts surrounding the felon in possession charge against Thomas. The court explained that he was not pleading guilty to the robbery part; he was pleading guilty to being a felon in possession of a firearm. After the court's explanation, Thomas expressed his desire to go forward with his guilty plea.

8

Thomas' attorney stated that he was satisfied that Thomas fully understood the charges against him and the consequences of entering a guilty plea. He also stated that he was satisfied that Thomas was knowingly and voluntarily entering his plea of guilty.

The PSI showed that Thomas had a criminal history of VI. He had been convicted on three separate occasions of violent felonies—two convictions for robbery in the second degree and one conviction for robbery in the third degree. The PSI recommended a sentencing guideline range of 188 to 235 months imprisonment.

Thomas' objections to the PSI where either overruled or withdrawn at sentencing. The court sentenced Thomas to 235 months imprisonment at the high end of the guidelines range based on the seriousness of his past convictions and the present crime. Thomas then stated that he did not hit the officer with his vehicle. The court replied "you did hit him, and it's lucky that he wasn't killed." Sentencing Hearing Tran. at 15. Thomas then stated:

> The only reason I pled guilty to this was because, from my understanding, you was supposed to have ran my charges for once, and then—if I knew all this, I would have took it trial. I will just put it like that, because I know I ain't guilty of none of this shit. And then you bringing up something 10 years ago. It's 15 years now,

> basically 15 years. I thought, if it was over 10 years, it's
> supposed to do away with it.

Id. at 16.

Thomas then asked if he could go trial, and the court replied that he could not, to which Thomas said, "I didn't know I was pleading. I ain't never know I was pleading in this." Id. at 17. The court explained that Thomas had already pleaded guilty at an earlier proceeding, but he said he did not know he was pleading guilty at that time. The court stated that it had received Thomas' competency report and had no doubt as to his competency to have entered a guilty plea. Thomas was sentenced to 235 months imprisonment to be followed by five years of supervised release.

## II.

Thomas contends that he did not understand the nature of the charges or the consequences of his guilty plea. Concerning the nature of the charges, Thomas contends that he did not understand the difference between the felon in possession of weapons charge and the felon in possession of ammunition charge. Concerning the consequences of his guilty plea, Thomas contends that he did not understand the legal concept of statutory mandatory minimums. He also argues that he did not understand the Blakely waiver in his plea agreement, although he admits that it

10

was ultimately deleted from the written agreement. He argues that he did not understand that by pleading guilty he was waiving his right to a jury trial and that his low IQ corresponds to, at best, borderline mental retardation.

The government contends that the district court specifically questioned Thomas, that he knowingly and voluntarily entered a guilty plea, and that he understood the nature of his charges and the consequences of his plea. The government points to the findings of the psychologist who determined that, despite his low verbal IQ score, Thomas was competent to assist in the preparation of his case for trial.

To satisfy the requirements of due process, a guilty plea must be entered into knowingly and voluntarily. United States v. Moriarity, 429 F.3d 1012, 1019 (11th Cir. 2005). "Whether a guilty plea and an accompanying waiver of rights are knowingly and voluntarily entered is a mixed question of law and fact, which we review de novo." Allen v. Thomas, 161 F.3d 667, 670 (11th Cir. 1998). However, "[c]onstitutional objections not raised before the district court are reviewed only for plain error. Likewise, when a defendant fails to object to a Rule 11 violation, we review only for plain error." Moriarity, 429 F.3d at 1018–19 (citation omitted). We have observed that to preserve a Rule 11 error a defendant should file a motion to withdraw the guilty plea in district court. Id. at 1018 n.2.

11

In the present case Thomas' counsel stated during the plea colloquy that his plea was knowing and voluntary. Thomas requested a trial during the sentencing hearing after his sentence had been pronounced, but he did not file a motion to withdraw his guilty plea. Therefore, we review only for plain error. See id.

"To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." Id. at 1019. If all three elements are met, we will reverse only if the plain error substantially affected the fairness of the proceedings. Id. When accepting a guilty plea, a court must comply with the requirements of Rule 11 and must "specifically address three core principles, ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id. (quotation marks omitted).

The district court did not plainly err by accepting Thomas' plea as voluntary, knowing, and intelligent because Thomas' plea colloquy met the three core objectives of Rule 11: (1) Thomas acknowledged that no one had promised him anything to plead guilty nor had anyone threatened or forced him to plead guilty; (2) the court reviewed and explained the nature of the charges to him; and (3) the court ensured that Thomas was aware of the direct consequences of his

guilty plea by explaining that his plea waived his rights to a jury trial, to remain silent, and to cross-examine witnesses.

The district court explained at length to Thomas the effect that 18 U.S.C. § 924(e) would have on his sentence and how it required a mandatory minimum of fifteen years imprisonment. Thomas' comment during the plea colloquy that he was "just trying to make sure that I don't get over 15 years," Plea Colloquy Tran. at 25, establishes that he understood the consequences of his guilty plea. Thomas specifically confirmed that he understood the charges to which he was pleading guilty and that he had sufficient time to discuss those charges with his lawyer, who also confirmed that Thomas understood the charges and the consequences of a guilty plea. Thomas relies on his low IQ score, but the psychologist found him competent to understand the proceedings against him, and the record reflects that he did understand those proceedings. Thomas argues that he did not understand the Blakely waiver, but because it was deleted from his plea agreement, that argument actually supports the conclusion that his plea, including his sentence appeal waiver, was entered knowingly and voluntarily. When the district court determined that Thomas did not understand that part of the plea agreement, it ensured that the provision was deleted.

Upon careful review of record, we conclude that the district court did not plainly err when it accepted Thomas' guilty plea as knowing and voluntary.

**III.**

Thomas also contends that district court clearly erred in finding him competent to stand trial because the record of his plea hearing shows that he did not have a factual understanding of the proceedings against him. He relies on <u>Pate v. Robinson</u>, 383 U.S. 375, 86 S. Ct. 836 (1966), to support his contention that the district court should have conducted a competency hearing <u>sua sponte</u> before accepting his guilty plea. He argues that the psychologist's evaluation of him, which concluded that he was competent to stand trial, was conducted before he had been indicted on the felon in possession charges. Therefore, he asserts that the evaluation was incomplete because the psychologist did not evaluate whether he understood the nature of those charges. He argues that the district court should not have found him competent on the basis of that psychological evaluation.

In order to be deemed competent to stand trial, a defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,'" and he must have a rational and factual understanding of the proceedings against him. <u>Wright v. Sec'y for Dep't of Corr.</u>, 278 F.3d 1245, 1256 (11th Cir. 2002) (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402, 80 S.

14

Ct. 788, 789 (1960)). If the defendant does not request a competency hearing, "the standard for determining whether a trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial . . . is whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency." Id. (citing Drope v. Missouri, 420 U.S. 162, 180, 95 S. Ct. 896, 908 (1975)). When the district court does not hold sua sponte a competency hearing, we determine whether the defendant's procedural due process rights were violated by focusing on: "(1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial." Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir. 1990) (citing Drope, 420 U.S. at 180, 95 S. Ct. at 908).

We review a district court's finding that a defendant was competent to stand trial under a clearly erroneous standard. United States v. Hogan, 986 F.2d 1364, 1372 (11th Cir. 1993). The record establishes that at the plea hearing Thomas' behavior and demeanor were not irrational. He asked questions related to how he could avoid being sentenced above the 15-year mandatory minimum. When Thomas hesitated about entering his guilty plea, neither Thomas nor his attorney claimed that Thomas was incompetent. Thomas' attorney explained to the district

15

court that Thomas was scared because he was familiar with state court proceedings but unfamiliar with those in federal court.

The psychological evaluation conducted at Thomas' request showed that Thomas was competent to enter a plea or to stand trial. The fact that the evaluation was conducted before Thomas was indicted on the felon in possession charges does not negate those findings of competency. The district court did not clearly err in relying on that psychological evaluation and Thomas' behavior and demeanor at the plea colloquy to determine that Thomas was competent to enter a plea.

## IV.

Thomas contends that the district court violated his Sixth Amendment rights under United States v. Booker, 534 U.S. 220, 125 S. Ct. 738 (2005), when it found that Thomas possessed a firearm in connection with a robbery, and then it used that finding to enhance his criminal history level and criminal history category. The government argues the merits of that position, but it had previously filed a motion to dismiss Thomas' appeal based on the sentence appeal waiver that was part of Thomas' plea agreement. That motion was carried with this case.

In its motion to dismiss, the government contends that Thomas knowingly and voluntarily entered into a sentencing waiver agreement as part of his plea, that

16

he was specifically questioned by the district court about that waiver, and that the record establishes that he understood the significance of that waiver.

Thomas responds that he did not understand the plea waiver or its implications and did not understand the Blakely waiver that was deleted from his plea agreement. He argues, as discussed in the second and third sections of this opinion, that he did not understand the nature of the charges against him or the consequences of a guilty plea; that, at best, he is borderline mentally retarded; and that the district court's finding of competency was clearly erroneous. We have already rejected those arguments and have concluded that Thomas entered his plea knowingly and voluntarily.

Specifically considering the sentence appeal waiver provision in the plea agreement, that waiver, like the plea agreement as a whole, is valid only if it was entered into knowingly and voluntarily. United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the sentence appeal waiver during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver. Id. at 1351; see also United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001). An appeal waiver includes the waiver of the right to appeal "difficult or

17

debatable legal issues," including "blatant error."  United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999).  We have also held that broad waiver language can include in its scope a waiver of the right to appeal based on Booker grounds. United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005).

During the plea colloquy, the district court specifically questioned Thomas about the terms of his sentence appeal waiver.  The court concluded that Thomas did not understand the implications of the Blakely waiver provision in that agreement, and the parties agreed to delete that provision from the plea agreement. The three exceptions included in Thomas' sentence appeal waiver provided that Thomas maintained the right to appeal his sentence based only on the following: (1) the district court's imposition of any punishment in excess of the statutory maximum; (2) the district court's imposition of any punishment that constitutes an upward departure from the guidelines sentencing range as determined by the court at the time the sentence is imposed; and (3) a claim of ineffective assistance of counsel.

During the plea colloquy, Thomas told the court that he understood that he was giving up all rights to appeal his sentence except on those three limited grounds.  He also told the court he had discussed with his attorney the important constitutional rights he was giving up in that section of the plea agreement.

18

Thomas' attorney specifically stated that Thomas understood the sentence appeal waiver.

From all of this, we conclude that Thomas knowingly and voluntarily agreed to the sentence appeal waiver.  Regardless of the fact that the <u>Blakely</u> waiver provision was deleted, Thomas' <u>Booker</u>-based appeal does not fall within any of the exceptions carved out in the sentence appeal waiver provisions that remained part of the agreement.   The district court sentenced Thomas at the high end of the guidelines range but did not impose any punishment constituting an upward departure from the guidelines sentencing range as it had determined that range when the sentence was imposed.

Because the sentence appeal waiver is enforceable and because Thomas' sentence appeal is not based on any of the exceptions to the waiver, we grant the government's motion to dismiss that part of Thomas' appeal.

**AFFIRMED in part; DISMISSED in part.**