[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10629
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:08-cr-00427-HLA-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HENOCK COLIMON, JR.,
a.k.a. Henock,
a.k.a. Haiti,
a.k.a. "H",
a.k.a. Marco,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 1, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Henock Colimon, Jr. appeals his convictions, pursuant to a guilty plea, and combined 300-month sentence for conspiracy to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)-(B), 846, and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1). He argues that the government breached the plea agreement by failing to make a substantial-assistance motion, and he suggests that his plea is invalid because he entered it in reliance on the purported promise of such a motion. He further argues that his sentence appeal waiver does not bar review of whether (1) it was error to impose his firearm-possession and drug-trafficking sentences to run consecutively and (2) the total 300-month sentence was substantively unreasonable. For the reasons set forth below, we affirm.

## I.

Colimon and his codefendant resided in an apartment in Jacksonville, Florida, from which they sold crack and powder cocaine. While distributing the drugs, Colimon sometimes was armed with a revolver or semiautomatic pistol. After the codefendant relocated to another apartment, Colimon remained in the first apartment and continued to distribute drugs from within it. The codefendant continued to assist Colimon by driving him to other locations to conduct drug

deals and by allowing him to use her cell phone to facilitate his drug business.

On one occasion in August 2008, a confidential source ("CS") arranged a drug transaction with Colimon. The CS used his own vehicle to pick up Colimon and, as instructed by law enforcement, drove through a stop sign. An officer conducted a traffic stop and, upon observing a handgun near the vehicle's console, ordered Colimon and the CS to exit the vehicle. A search of the vehicle revealed 40.5 grams of powder cocaine and a personal-use amount of marijuana. Colimon had $830 in his pants pocket. On an occasion in October 2008, Colimon was a passenger in a vehicle that was stopped for traffic violations. The officer asked Colimon, who was obviously nervous, to exit the vehicle while it was searched. Before complying, Colimon placed on the floorboard a shoe box that he was holding. As he exited the vehicle, he dropped the lid to a styrofoam cup that was in the vehicle. The cup contained marijuana and marijuana seeds. The shoe box contained 424 grams of marijuana, a *de minimis* quantity of cocaine base, and 1 ounce of powder cocaine. Officers also found a loaded pistol in the vehicle, and Colimon had $420 in his pants pocket.

After Colimon was arrested, he used the jail's telephone system to call his codefendant. He instructed her on how to continue his drug business during his incarceration, including how to contact his customers, which customers to

continue serving and which to avoid, how to prepare, package, and distribute

cocaine, and who to engage to cook powder cocaine into crack for her.

In 2009, Colimon was charged in all 11 counts of a superseding indictment

that was returned against him and the codefendant: (Count 1) conspiracy to

distribute 50 grams or more of cocaine base and 500 grams or more of cocaine, in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)-(B), 846; (Counts 2-3) making a

residence available for the unlawful storage and distribution of cocaine and

cocaine base, in violation of 21 U.S.C. § 856(a)(2), (b), 18 U.S.C. § 2; (Counts 4,

7, & 11) possession of a firearm in furtherance of a drug-trafficking crime, in

violation of 18 U.S.C. § 924(c)(1); (Counts 5 & 8) possession of a firearm by a

convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); (Counts

6 & 9) possession with intent to distribute cocaine, in violation of 21 U.S.C.

§ 841(a)(1), (b)(1)(C); and (Count 10) possession with intent to distribute

marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D).

Colimon entered into a negotiated agreement whereby he would plead guilty

to Counts 1 and 4. The agreement included the following cooperation provision:

> If the cooperation is completed prior to sentencing, the government
> agrees to consider whether such cooperation qualifies as "substantial
> assistance" . . . warranting the filing of a motion at the time of
> sentencing recommending (1) a downward departure from the
> applicable guideline range pursuant to U.S.S.G. § 5K1.1, or (2) the

imposition of a sentence below a statutory minimum . . . pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" . . . . warranting a filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Other provisions in the agreement stated that the government "reserve[d] its right to make any recommendations it deem[ed] appropriate regarding the disposition of this case, subject to any limitations set forth" elsewhere in the agreement, that the court would not be bound by any discussions between the government and Colimon's counsel, and that Colimon would not be permitted to withdraw his plea if the court rejected any of the parties' recommendations. Finally, the agreement included a waiver of Colimon's right to appeal or collaterally attack his sentence on any ground, including miscalculation of the guideline range,

> except (a) the ground that the sentence exceeds the defendant's applicable guidelines range *as determined by the [c]ourt* pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, . . . then the defendant is released from his waiver . . . .

5

At the plea colloquy, the magistrate judge informed Colimon that the district judge would have the authority to impose a sentence that was more or less severe than the advisory guideline range, up to and including the statutory maximum sentence. Colimon expressed his understanding that he would not have a right to withdraw his plea if the sentence imposed were to be more severe than he expected. The magistrate reviewed the statutory penalties, individually and in the aggregate. Colimon acknowledged his signature on the plea agreement and his initials on each page of the agreement. He acknowledged that he had read the entire agreement, understood it, and was bound by it.

With respect to the cooperation provision, the magistrate stated,

[T]he government's agreeing to consider your cooperation and . . . whether it amounts to substantial assistance as that term is defined in the guidelines and under the law, and . . . to consider filing the appropriate motion to reduce your sentence . . . at the time of sentencing or sometime after sentencing.
    The main thing I want to make sure you understand is the government's not promising at this point to file a motion to reduce your sentence.
    They're just agreeing at this point to consider your cooperation in determining whether you've provided substantial assistance . . . and what motion to file, if any.

Colimon said that he understood. The magistrate added, "[T]he determination as to whether substantial assistance has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney . . . , and

6

you agree that you cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise." Colimon expressed his agreement.

The magistrate also reviewed the terms of the sentence appeal waiver and explained the term "collateral attack." Colimon indicated that he understood the implications of the waiver and that he was making it freely and voluntarily.

After the government read the factual basis for the plea, Colimon confirmed that he was entering the plea freely and voluntarily, and without coercion or intimidation. The magistrate asked whether "anyone made any promises or assurances to [him] of any kind to get [him] to plead guilty[,] other than what[ was] stated in the plea agreement," and whether he was "relying on any agreement, discussion, promise, or understanding with anyone concerning what sentence [would] be imposed . . . other than what[ was] in the plea agreement." Colimon answered "no" to both questions. Colimon stated affirmatively that he would receive a sentence of 25 years' to life imprisonment, but he indicated that he did not know where in that range he would be sentenced and that no one had promised him a light sentence or other reward in exchange for his guilty plea. Both the prosecutor and Colimon's counsel told the court that no assurances, promises, or understandings had been made that were different or contrary to the terms in the plea agreement. The magistrate found that the plea had been entered freely,

7

voluntarily, knowingly, and intelligently, and the district court accepted the plea on the magistrate's recommendation.

The probation office determined that the § 924(c) offense in Count 4 required a mandatory, consecutive 60-month term of imprisonment. As to Count 1, the probation office determined that Colimon was accountable for 50 grams of cocaine base, 500 grams of cocaine, and 424 grams of marijuana, for a total marijuana equivalency of 1100.424 kilograms. His base offense level of 30, pursuant to § 2D1.1 and comment. (n.10(D)(i)), was reduced by 3 levels for acceptance of responsibility, pursuant to § 3E1.1(a)-(b), for a total offense level of 27. His 11 criminal-history points placed him in criminal history category V.

Colimon was subject to statutory sentencing ranges of 20 years' to life imprisonment for Count 1, and 5 years' to life imprisonment for Count 4, to run consecutively. His guideline range for Count 1 of 120 to 150 months' imprisonment became exactly 240 months' imprisonment due to the operation of the mandatory minimum, and another 60 months were added to the guideline sentence due to Count 4. Colimon also was subject to a statutory minimum and a guideline sentence of ten years' supervised release for Count 1, as well as statutory and guideline maximums of five years' supervised release for Count 4.

At the sentencing hearing, Colimon stated that he was not prepared to go

forward with sentencing because the government had not yet filed a substantial-assistance motion. He indicated that an FBI investigation with which he had cooperated was underway, and that the government was not yet in a position to file the motion, so he asked the court to continue the sentencing hearing. The court indicated that it was prepared to go forward with sentencing and would not continue the case. The government added that it was prepared for sentencing, that Colimon had not pled with any guarantee of a substantial-assistance motion, and that it would not be prepared to make such a recommendation until after Colimon had testified before a grand jury in the ongoing investigation. When the time came, the government would consider in good faith Colimon's cooperation and decide whether to file a Rule 35 motion for a sentence reduction.

The court denied the motion for a continuance and stated that it would revisit the case if the government were to file a Rule 35 motion in the future. Colimon indicated that he had signed the plea agreement with the expectation that he would receive a substantial-assistance reduction, and that he believed the government was engaging in "a little feet-dragging," particularly as other defendants in the past had received sentence reductions for far less cooperation than Colimon had provided.

The court reviewed the calculations in the PSI and Colimon objected to the

continuing disparity between sentences for crack and powder cocaine offenses. He further objected that his sentences should be imposed concurrently rather than consecutively, although he acknowledged this Circuit's controlling case law to the contrary. The district court overruled his objections.

The government noted that there had been no side deal during the plea negotiations that would require the substantial-assistance motion to be filed based on anything other than an assessment of Colimon's assistance with the FBI investigation. In light of Colimon's offense conduct and extensive criminal history, the government requested a 300-month mandatory-minimum sentence. The court sentenced Colimon to 240 months' imprisonment for Count 1 and 60 months' imprisonment for Count 4, to run consecutively, as well as concurrent terms of 10 and 5 years' supervised release, respectively.

## II.

As Colimon did not move to withdraw his plea in the district court, we review the validity of the plea for plain error. *See United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999). "The four-prong test to establish plain error is: (1) there must have been an error; (2) the error must have been plain; (3) the error must have seriously affected substantial rights; and (4) the error must have seriously affected the fairness, integrity, or public reputation of the judicial

proceedings." *United States v. Woodard*, 387 F.3d 1329, 1331 (11th Cir. 2004). On direct appeal, we strongly presume that the defendant's statements at the plea colloquy were truthful, including his representation that he understood the consequences of his plea. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error . . . , must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004).

We review *de novo* the question of whether the government breached its plea agreement with the defendant. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). We also review *de novo* the validity and interpretation of an appeal waiver. *See United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993) (reviewing *de novo* whether a waiver was made knowingly and voluntarily); *see also United States v. Rubbo*, 396 F.3d 1330, 1332-35 (11th Cir. 2005) (reviewing *de novo* the interpretation of the terms of a waiver).

Federal Rule of Criminal Procedure 11 "imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez-Fraire*,

11

208 F.3d 945, 949 (11th Cir. 2000). That inquiry "must address three core concerns underlying Rule 11: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *Id.* (quotation marks omitted). As part of this inquiry, the court must inform the defendant of the rights he will waive by pleading guilty, all of the required and potential penalties, the procedure for calculating a sentencing range and determining a reasonable sentence, and the terms of any appeal waiver in the plea agreement. Rule 11(b)(1).

"Plea bargains . . . are like contracts and should be interpreted in accord with what the parties intended." *Rubbo*, 396 F.3d at 1334. Absent some indication that the parties intended otherwise, the language of the agreement should be given its ordinary and natural meaning. *See id.* at 1334-35.

A sentence appeal waiver must be made knowingly and voluntarily. *Bushert*, 997 F.2d at 1350-51. Such a waiver is one of the direct consequences of a guilty plea, so it is part of the core concerns that must be addressed at a Rule 11 hearing. *Id.* at 1351. Thus, in order for the waiver to be valid, the court must have specifically discussed it with the defendant during the Rule 11 hearing, or the record must make manifestly clear that the defendant otherwise understood the full significance of the waiver. *Id.* A waiver of the right to appeal may include

12

difficult or debatable issues or even blatant error. *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999).

The cooperation provision in Colimon's plea agreement expressly stated only that the government would "consider whether [his] cooperation qualifie[d] as 'substantial assistance,'" and that if the government determined that a substantial-assistance reduction was warranted, it would file either a pre-sentencing § 5K1.1 or § 3553(e) motion or a post-sentencing Rule 35 motion. It further stated that the substantial-assistance determination rested solely with the government, that Colimon agreed not to challenge that determination, and that the government retained the right to recommend whatever sentence it deemed appropriate. During the plea colloquy, the magistrate reviewed these provisions in detail, noted specifically that the government had not promised to file a sentence-reduction motion, and asked Colimon whether he understood that he would not be able to challenge the government's determination of whether substantial assistance had been provided or whether a motion to that effect should be filed. Colimon, counsel, and the prosecutor all assured the magistrate that no promises, agreements, or understandings had been reached other than those contained in the plea agreement, and Colimon explicitly told the magistrate that he knew that he would be sentenced to at least 25 years' imprisonment. The record contains no

13

evidence that the government promised or otherwise obligated itself to file a substantial-assistance motion prior to the sentencing hearing.

Accordingly, the district court did not err, plainly or otherwise, when it failed to find that Colimon had entered his plea in reliance upon such a promise and that, as a consequence, the plea was not knowing and voluntary. *See Woodard*, 387 F.3d at 1331; *Hernandez-Fraire*, 208 F.3d at 949; *Medlock*, 12 F.3d at 187. Furthermore, because the plea agreement clearly did not promise that a substantial-assistance motion would be filed, and nothing in the record suggests that the parties intended otherwise, the government did not breach the agreement by failing to file such a motion. *See Rubbo*, 396 F.3d at 1334-35. As to the appeal waiver, the magistrate expressly reviewed its terms, and Colimon indicated that he understood the waiver and that he was making it freely and voluntarily. Accordingly, it is valid, as well. *See Bushert*, 997 F.2d at 1351.

Because both the appeal waiver and the overall plea are valid and the government is not in breach, Colimon may not appeal his sentence unless it is above the guideline range as determined by the district court, above the statutory maximum, or in violation of the Eighth Amendment. Colimon's total 300-month sentence is well below the statutory maximum of life imprisonment, it corresponds to the guideline sentence calculated in the PSI and adopted by the district court,

14

and a sentence below the statutory maximum generally does not trigger Eighth Amendment concerns. *See United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005) (addressing the Eighth Amendment). Therefore, there are no appealable issues arising from Colimon's sentence. *See Howle*, 166 F.3d at 1169.

For the foregoing reasons, we affirm Colimon's convictions and sentences.

**AFFIRMED.**