# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3507
_____

United States of America

*Plaintiff - Appellee*

v.

Bryan Howard, also known as Chase Profit

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Central
_____

Submitted: September 23, 2021
Filed: March 9, 2022
[Published]
_____

Before GRUENDER, MELLOY, and KELLY, Circuit Judges.
_____

PER CURIAM.

Bryan Howard pleaded guilty to conspiring to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. His plea agreement contained an appeal waiver in which he waived "all defenses and his right to appeal any non-jurisdictional issues." Excluded from the waiver was Howard's "right to

appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a)." Howard appeals the sentence the district court imposed. For the reasons that follow, we will enforce the waiver and dismiss the appeal.

During the sentencing process, Howard was classified as a career offender under the United States Sentencing Guidelines. See U.S.S.G. § 4B1.1 (stating that a defendant is a career offender if, as relevant, he has at least "two prior felony convictions" for either a crime of violence or a controlled substance offense). The offense conduct for the instant offense of conviction was described as occurring between May 2015 and October 2015. Howard was indicted in 2019. He pleaded guilty and was sentenced in 2020. According to the presentence report, it appears that one of the qualifying predicate felony convictions for his career-offender classification was dated 2007. The other was dated June 5, 2018.

Applying the Sentencing Guidelines, the district court calculated an initial base offense level of 32. The court applied a 2-level increase because Howard possessed a firearm in connection with the instant offense, see U.S.S.G. § 2D1.1(b)(1), and it enhanced his offense level to 37 based on his career-offender status and the statutory maximum of life imprisonment for his offense of conviction, see id. § 4B1.1(b)(1). The court then applied a three-level reduction for acceptance of responsibility, see id. § 3E1.1, resulting in a total offense level of 34. It concluded Howard had a Category VI criminal history based on either thirteen assessed points or his career offender status. See id. § 4B1.1(b). These determinations resulted in an advisory sentencing guideline range of 262 to 327 months in prison. Howard objected, as relevant, to that range based on the firearm enhancement and the criminal history points assessed for one of his convictions. He, however, did not object to his career-offender classification. Instead, at the sentencing hearing, he agreed his career-offender status

mooted his objections to the guideline calculations and range, including the firearm enhancement and his criminal history score. The district court sentenced him to 262 months in prison, to run consecutively to his undischarged state court sentences.

On appeal, Howard's counsel moved for leave to withdraw and filed a brief under Anders v. California, 386 U.S. 738 (1967), arguing the sentence will result in a miscarriage of justice because it is substantively unreasonable, as the district court failed to appropriately weigh various factors. After independent review under Penson v. Ohio, 488 U.S. 75 (1988), we directed the parties to file supplemental briefing addressing whether Howard was correctly classified as a career offender based on his June 2018 conviction and, if not, whether that error can be recognized in light of his appeal waiver. See U.S.S.G. § 4B1.2(c) (stating, as relevant, that the term "two prior felony convictions" means "the defendant committed the instant offense of conviction subsequent to" sustaining at least two qualifying felony convictions).

In response, Howard argues the district court incorrectly classified him as a career offender and, as a result, imposed an illegal sentence. He contends the issue falls outside the scope of the appeal waiver because the district court effectively departed or varied upward when it incorrectly applied the Chapter 4 career-offender enhancement. Alternatively, he argues enforcing the waiver would result in a miscarriage of justice. He asserts that his other objections would need to be litigated, and his guideline range undisputedly would have been lower than 262 months under a number of different scenarios contemplated by his previously mooted objections. The government concedes Howard's career-offender classification amounted to plain error. It contends, however, that the appeal waiver bars review because Howard knowingly and voluntarily waived his appellate rights, and a miscarriage of justice would not occur. Specifically, it argues Howard's sentence was not illegal because, under this court's long-standing precedent, the district court imposed a sentence within the statutory range, and a misapplication of the Sentencing Guidelines does not amount to a miscarriage of justice.

-3-

After careful review, we conclude the appeal waiver is valid, enforceable, and applicable to the arguments raised in this appeal. See United States v. Scott, 627 F.3d 702, 704 (8th Cir. 2010) (stating that the validity and applicability of an appeal waiver is reviewed de novo); United States v. Andis, 333 F.3d 886, 889–92 (8th Cir. 2003) (en banc) (concluding that an appeal waiver will be enforced if the appeal falls within the scope of the waiver, the defendant knowingly and voluntarily entered into the plea agreement and the waiver, and enforcing the waiver would not result in a miscarriage of justice). We first conclude, and Howard does not dispute, that the statements he made at his change-of-plea hearing, which carry a strong presumption of verity, demonstrate he knowingly and voluntarily entered into the plea agreement and waiver. See id. at 890-91; Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997). Second, we conclude that the appeal falls within the scope of the waiver. Howard broadly waived his right to appeal any non-jurisdictional issues, and the narrow exceptions were contingent upon the district court departing upward under the Sentencing Guidelines or varying upward under section 3553(a)—neither of which the court did when it sentenced Howard within the determined guideline range. See United States v. McIntosh, 492 F.3d 956, 959–60 (8th Cir. 2007) (this court looks to the plain language of the plea agreement to assess whether the issues on appeal fall within its scope); United States v. Reeves, 410 F.3d 1031, 1033–34 (8th Cir. 2005) (concluding that defendant's challenge to his Chapter 4 career-offender classification fell within the scope of his "very broad" appeal waiver, in which he waived "all rights to appeal all non-jurisdictional issues," including the sentence imposed and the Guidelines range, but reserved his right to appeal from an upward departure). Cf. Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995) (recognizing that a misapplication of the Sentencing Guidelines is not jurisdictional).

Finally, we conclude that enforcing Howard's appeal waiver would not result in a miscarriage of justice. See Andis, 333 F.3d at 891–92 (cautioning that the miscarriage-of-justice exception is "narrow" and "will not be allowed to swallow the general rule that waivers of appellate rights are valid"). This court has repeatedly

emphasized the illegal-sentence exception to the general enforceability of an appeal waiver is "extremely narrow," "[a]ny sentence imposed within the statutory range" is not appealable, and an allegation that the district court "misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver." Id. Accord United States v. Guice, 925 F.3d 990, 993 (8th Cir. 2019) (concluding that a mere misapplication of a Sentencing Guidelines enhancement did not amount to a miscarriage of justice); United States v. Sisco, 576 F.3d 791, 796 (8th Cir. 2009). See also United States v. Lumpkins, 687 F.3d 1011, 1014–15 (8th Cir. 2012) (concluding that a miscarriage of justice would not result when defendant challenged his Chapter 4 career-offender classification); United States v. Boroughf, 649 F.3d 887, 890 (8th Cir. 2011) (citing Andis, 333 F.3d at 892) (relying on Andis to summarily conclude that no miscarriage of justice would result from applying an appeal waiver to a claim of substantive unreasonableness). Howard's sentence falls within the statutory range. See 21 U.S.C. § 841(b)(1)(A) (specifying a term of imprisonment of not less than ten years or more than life); Andis, 333 F.3d at 893 (stating that an appeal challenging a statutorily authorized sentence "should be summarily dismissed based on [the] waiver").

Accordingly, we dismiss this appeal based on the appeal waiver, and we grant counsel's motion to withdraw.

GRUENDER, Circuit Judge, concurring.

I agree that our precedent requires enforcing Howard's appeal waiver against his claim that the district court miscalculated his advisory sentencing guidelines range. *See, e.g.*, *United States v. Guice*, 925 F.3d 990, 993 (8th Cir. 2019); *United States v. Andis*, 333 F.3d 886, 892 (8th Cir. 2003) (en banc). I write separately to defend this precedent against the criticism that it is unfair to criminal defendants. Disregarding appeal waivers whenever the district court made what in hindsight was an obvious error would reduce the value of appeal waivers to the government and

thus reduce criminal defendants' bargaining power in plea negotiations. Anytime the government accepted an appeal waiver, it could expect to expend resources litigating on appeal whether an alleged error was sufficiently obvious and would bear the risk that the court would decide that it was. "[P]rosecutors would no longer be willing to give very much in exchange for [an appeal] waiver, and the ability of defendants to plea bargain would be hampered." *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999).

It is natural to experience frustration when the application of a rule to a particular case results in what seems like an inequitable outcome. But sometimes the benefits of a rule depend on following it even when it leads to unfortunate results. For example, the exclusionary rule would not deter Fourth Amendment violations unless we insisted on it even when doing so means the guilty go free. *See Mapp v. Ohio*, 367 U.S. 643, 656, 658-59 (1961). Filing deadlines and other "claim-processing rules" would not "promote the orderly progress of litigation" unless we applied them even when doing so means genuine wrongs go unredressed. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). So too, appeal waivers would not empower criminal defendants in plea negotiations unless we enforced them against meritorious claims. *Howle*, 166 F.3d at 1169. Waiving the right to appeal errors no matter how obvious they become in hindsight is risky. But for a criminal defendant who values what the government has to offer in exchange, the risk may be worth it. I would leave each criminal defendant free to decide that question for himself.

MELLOY, Circuit Judge, concurring.

I concur in the per curiam opinion in this case. I agree that under our controlling precedent the appeal in this case is covered by the appeal waiver and the appeal should be dismissed.

I write separately only to express my disappointment with the refusal of the United States Attorney's Office to join with the defense in requesting a remand to correct an obvious error. As noted in the opinion, the government concedes that plain error occurred in this case. Mr. Howard is an unsympathetic individual, with an extensive and violent criminal history. He may very well deserve the sentence that was ultimately imposed upon him in this case. However, I believe that decision should have been made after a proper computation of the appropriate sentencing guideline, and then an application of any departures or variances that may be appropriate.

KELLY, Circuit Judge, concurring.

The parties agree that Howard does not qualify as a career offender under the Sentencing Guidelines, and there is no dispute that his advisory Guidelines range is lower than as wrongly calculated at sentencing. Nevertheless, the government asserts we cannot correct this error because Howard's sentence was within the statutory range and thus no "miscarriage of justice" has occurred.

It seems our precedent supports the government's position. See United States v. Pierre, 912 F.3d 1137, 1143–44 (8th Cir. 2019) (explaining that the "miscarriage of justice" exception "principally allow[s] the appeal of illegal sentences that are greater than the maximum statutory penalty," not an appeal of a district court's alleged misapplication of the Guidelines); United States v. Guzman, 707 F.3d 938, 942 (8th Cir. 2013) (holding that enforcing an appeal waiver to preclude appeal of a sentence below the statutory maximum would not be a miscarriage of justice). But Howard's statutory range was 10 years to life imprisonment. Thus, under this approach, there is no sentencing error that would fall in the miscarriage of justice category, so long as the sentence imposed was no longer than a sentence of life imprisonment. It can't be that simple.

A waiver of appeal should not be set aside lightly, so long as it is the result of a knowing, voluntary, and reasoned decision to give up the right to appeal in exchange for some meaningful benefit. Here, however, it was not Howard who sought review of his Guidelines calculation; it was the court who discerned such an error. In any event, what we are left with now is a significant error at Howard's sentencing hearing that everyone acknowledges and everyone concedes but no one is willing or able to correct. I share Judge Melloy's disappointment with the government's decision not to agree to a remand. But this case also highlights the self-imposed shortcomings in our ability to correct obvious errors that affect the rights of individual defendants. I concur only because our case law demands it.

_____