[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14100

_____

DEANDRE MARKEE KING,
a.k.a. Santonio Spratlin,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:13-cr-00073-TWT-JKL-1

_____

Before GRANT, LUCK, and ANDERSON, Circuit Judges.

GRANT, Circuit Judge:

A criminal defendant who wishes to plead guilty can waive the right to challenge his conviction and sentence in exchange for a better plea deal. With limited exceptions, a valid waiver of the right to collateral appeal bars habeas claims brought under 28 U.S.C. § 2255. This case requires us to decide whether that principle applies when a defendant seeks to challenge his sentence based on the Supreme Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). In short, does a valid waiver of collateral attack foreclose habeas relief based on a new retroactive constitutional rule?

We hold that it does. None of the narrow exceptions that permit a court to look past an appeal waiver apply here. Because the defendant waived his right to bring a habeas challenge, we affirm the district court's order below.[1]

## I.

In 2012, Deandre King and three associates robbed a Dunwoody, Georgia bank at gunpoint, escaping with $71,668. With help from the bank's surveillance cameras and the suspects' cell phone data, FBI agents tracked down the perpetrators. King

---

[1] The district court determined both that King's collateral appeal waiver prevented his petition and that King failed to overcome his procedural default. Because the waiver is valid and no exception applies, we hold that it precludes King's claim. We thus do not reach the question of procedural default.

and the others were arrested near another bank four months after the robbery; the car they were traveling in contained guns, masks, and gloves.

The government first charged King with three separate crimes. But in exchange for King's agreement to plead guilty, it substituted a lesser set of charges: one count of conspiracy to commit bank robbery under 18 U.S.C. § 371 and one count of using, carrying, or possessing a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii). The government specified that the "crime of violence" underlying the § 924(c) charge was conspiracy to commit Hobbs Act robbery. King's plea agreement included a "waiver of appeal" giving up "the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255)."[2] The district court imposed a 135-month sentence, 51 months for the conspiracy offense and 84 months for the § 924(c) offense.

As agreed, King did not directly appeal his conviction or sentence after signing the waiver. But later developments in constitutional law inspired him to mount a collateral challenge. In 2015, the Supreme Court held that the residual clause of the Armed

---

[2] King's waiver encompassed both the right to directly appeal and the right to collaterally attack his conviction and sentence, but we call it an "appeal waiver" for the sake of brevity.

Career Criminal Act was unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591 (2015). Though King's case was unrelated to ACCA, he filed a pro se § 2255 motion to vacate his sentence. The district court denied the motion, pointing out that ACCA "played no role" in determining King's sentence—and that, in any case, King's appeal waiver barred any collateral challenge.

Four years later, in *United States v. Davis*, the Supreme Court applied its reasoning from *Johnson* to hold that the residual clause of § 924(c) was also unconstitutional. 139 S. Ct. at 2336. That opinion hit closer to home, because the government's use of conspiracy as an underlying "crime of violence" to King's § 924(c) conviction had relied on that statute's residual clause. This Court soon held that *Davis*'s new constitutional rule was retroactive to cases on collateral review. *See In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019). When King requested permission to file a second § 2255 motion challenging his conviction and sentence, we granted it because King had made a prima facie showing that he was entitled to relief under *Davis*. Soon after, we joined several other circuits in holding that "conspiracy to commit Hobbs Act robbery does not qualify as a 'crime of violence'" for § 924(c) purposes after *Davis*. *Brown v. United States*, 942 F.3d 1069, 1075–76 (11th Cir. 2019) (quoting 18 U.S.C. § 924(c)(3)(A)).

The district court denied King's second motion. First and foremost, the court explained that King's appeal waiver prevented him from challenging his sentence. King argued that he qualified for an exception to the appeal waiver, analogizing his case to one

in which a district court imposed a sentence above the statutory maximum. *See United States v. Johnson*, 541 F.3d 1064, 1068 (11th Cir. 2008). But the court rejected that comparison as qualitatively different. It also concluded that because King had not challenged his sentence on direct appeal, his claim was procedurally barred. King now appeals.

## II.

We review the validity and scope of an appeal waiver de novo. *See United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993).

## III.

As a rule, "sentence appeal waivers, made knowingly and voluntarily, are enforceable." *Bushert*, 997 F.2d at 1345. King agreed not to challenge his conviction or sentence "on any ground" outside an agreed-upon 84-month maximum for his firearms conviction and as long as the district court stayed within the Sentencing Guidelines range. Even so, King now asserts that the Supreme Court's decision in *Davis* is a "winning lottery ticket" that "renders [his] § 924(c) conviction and sentence unlawful." But neither the law nor the odds are on his side.

"A plea agreement is, in essence, a contract between the Government and a criminal defendant." *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999). Like any contract, a plea agreement must be construed according to the intent and reasonable expectation of the parties. *United States v. Rubbo*, 396

F.3d 1330, 1334 (11th Cir. 2005). That interpretive practice is longstanding and well understood—by both prosecutors and defendants.

If courts step back from the contract-based approach for appeal waivers, it will upset significant reliance interests—again, for both prosecutors and defendants. First, prosecutors. A court's refusal to enforce a waiver as written would "deprive the government of the benefit that it has bargained for and obtained in the plea agreement." *United States v. Boyd*, 975 F.3d 1185, 1191 (11th Cir. 2020) (quotation omitted). As for defendants, ignoring appeal waivers would offer a second chance for some (at least to start), but that move would backfire in the end—if a defendant cannot offer an airtight appeal waiver, a plea bargain will be much harder to strike. *See Howle*, 166 F.3d at 1169. Certainty, in short, benefits both prosecutor and defendant.

To maintain that certainty, we permit appeal waivers to apply "not only to frivolous claims, but also to difficult and debatable legal issues." *United States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016). A defendant who signs an appeal waiver gives up even "the right to appeal blatant error," because the waiver would be "nearly meaningless if it included only those appeals that border on the frivolous." *Howle*, 166 F.3d at 1169. The same principle applies here. So even when a new constitutional rule might provide a strong basis for collateral attack, we enforce an appeal waiver according to its terms.

20-14100                Opinion of the Court                7

Of course, like most rules, this one has exceptions. In *United States v. Bushert*, we explained that even "judicially enforced, knowing and voluntary sentence appeal waivers" do not bar a "collateral § 2255 action concerning certain subjects." 997 F.2d at 1350 n.17. But those subjects are few and sharply defined. The most obvious is a jurisdictional defect; an appeal waiver cannot confer jurisdiction on a court where none exists. *See DiFalco*, 837 F.3d at 1215. We have also carved out narrow substantive exceptions. We will review a sentence "based on a constitutionally impermissible factor such as race." *Bushert*, 997 F.2d at 1350 n.18 (quotation omitted). And in one case, we suggested that perhaps "extreme circumstances"—like a "public flogging" sentence— might justify overlooking an appeal waiver as well. *Howle*, 166 F.3d at 1169 n.5. One last exception remains. We also allow review of "a sentence imposed in excess of the maximum penalty provided by statute." *Bushert*, 997 F.2d at 1350 n.18 (quotation omitted).

These exceptions are crucial to King's attempted appeal because his plea agreement, on its face, bars his challenge. King does not dispute the plain terms of his plea agreement: though he admitted to forcing bank employees to turn over tens of thousands of dollars—at gunpoint—the government dropped an armed bank robbery charge and a conspiracy charge brought under 18 U.S.C. § 1951. It kept only a charge of using, carrying, or possessing a firearm during a crime of violence under § 924(c), and substituted in a less serious conspiracy charge. *See* 18 U.S.C. § 371. In

exchange, King pleaded guilty to this lesser set of charges and agreed to waive the right to appeal his conviction and sentence.

This deal had obvious benefits for King. His original charges carried steep sentences—a 25-year statutory maximum for armed bank robbery and a 20-year maximum for conspiracy under § 1951, not to mention a possible sentence of life in prison for the § 924(c) firearms charge. *See* 18 U.S.C. §§ 2113(a), 2113(d), 1951(a); *Alleyne v. United States*, 570 U.S. 99, 112 (2013). Yet the guilty plea left him with a sentence of only 135 months—less than 12 years. The bank robbery charge was dropped entirely, and the new conspiracy charge had a statutory maximum of five years instead of twenty. *See* 18 U.S.C. §§ 371, 1951. As for the § 924(c) firearms charge, the government agreed to limit King's sentence to 84 months, dramatically under the statutory maximum—life in prison. A handwritten addition initialed by the lawyers on both sides specifically preserved King's right to attack any § 924(c) sentence exceeding that number. Beyond that, he forfeited the right to challenge any sentence within the Sentencing Guidelines.

King says that, after *Davis*, conspiracy to commit Hobbs Act robbery cannot qualify as a predicate for a § 924(c) charge. True enough, but his habeas petition does not challenge an outside-the-Guidelines sentence or a prison term above 84 months for the § 924(c) charge. Those are the only grounds on which King can appeal, and his *Davis* claim does not fit.

20-14100                Opinion of the Court                9

Nor does it fall within any of our established categories of unwaivable claims.[3] King tries to recast his *Davis* argument into a claim that his sentence exceeds the statutory maximum—one that he could bring despite his appeal waiver. According to King, because his § 924(c) conviction was explicitly based on a conspiracy charge that can no longer serve as a predicate, the firearm crime for which he was convicted was "no crime at all." And, he concludes, no crime at all deserves no sentence at all.

This argument misinterprets the nature and scope of the appeal-waiver exception for sentences exceeding the statutory maximum. The "maximum penalty provided by statute" referenced in *Bushert* is not a moving target that changes with new legal developments—it is the maximum statutory penalty in effect at the time of sentencing.

As we have explained, plea agreements must be understood to mean what their signatories intended, and the maximum-penalty exception fits comfortably within this framework. *Rubbo*, 396 F.3d at 1334; *Bushert*, 997 F.2d at 1350 n.18. That is because the maximum sentence prescribed by statute forms a crucial backdrop to any plea agreement. All plea negotiations operate on

---

[3] Though it would not be a fit here in any event, we note that our Circuit has never adopted a general "miscarriage of justice" exception to the rule that valid appeal waivers must be enforced according to their terms. *See Johnson*, 541 F.3d at 1067–68, 1069 n.5; *cf. United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003) (en banc) (explaining that the Eighth Circuit will "refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice").

the assumption that the statutory maximum currently in effect is the highest penalty available, and for good reason—the parties have no reason to expect a court to defy the law by exceeding it. *See Bushert*, 997 F.2d at 1350 n.18. If a court imposes a sentence unauthorized by statute it thus violates a fundamental assumption underlying the plea agreement—much as it would if it convicted the defendant of a crime to which she did not plead guilty. We disregard a valid appeal waiver only when the court ignores one of the "fundamental and immutable legal landmarks within which the district court must operate regardless of the existence of sentence appeal waivers." *Id.* The statutory maximum is one such landmark.

The same cannot be said for legal developments that may or may not someday occur. As the Seventh Circuit recently explained, an appeal waiver is designed "to account in advance for unpredicted future developments in the law." *Oliver v. United States*, 951 F.3d 841, 845 (7th Cir. 2020). Both parties understand that a higher court could later announce a new legal rule relevant to the defendant's conviction or sentence.

That possibility generates risk that the plea agreement may someday be open to attack, whether on direct appeal or through collateral review. An appeal waiver eliminates that risk for the government; the waiver is valuable precisely because it allocates the risk to the defendant. If a new constitutional rule favoring the defendant is later announced, no underlying assumption of the plea agreement or its appeal waiver has been upended. All that has

happened is that the government's wager has paid off—just as the defendant's wager pays off in the many cases in which no new rule provides a basis for appeal. The exception for sentences that exceed the statutory maximum honors the mutual understanding of the parties.

We have already interpreted the meaning of this exception in the context of appeal waivers that explicitly set it out (rather than rely only on our caselaw recognizing the exception). In such cases, we have held, the statutory maximum means "the upper limit of punishment that Congress has legislatively specified for violation of a statute." *Rubbo*, 396 F.3d at 1334–35; *see also United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005). It is not the maximum punishment permitted by a "line of decisions that was evolving at the time." *Rubbo*, 396 F.3d at 1335. Rather than reevaluating the "maximum penalty provided by statute" each time the Supreme Court announces a new rule, we apply the meaning understood by both parties when the appeal waiver was signed: the statutory maximum in effect at that time.

This Court has resisted previous attempts to "effectively write into the contract an exception that the parties did not agree to" by artificially broadening the statutory-maximum exception. *Johnson*, 541 F.3d at 1069. In *United States v. Johnson*, the defendant urged us to apply that exception to a claim based on an untimely restitution order. We declined, explaining that the statutory-maximum exception in *Bushert* targets "the imposition

of a sentence exceeding the statutory range authorized for the offense of conviction." *Id.*

We see no reason to backtrack here. The statutory maximum for King's § 924(c) charge at the time of his conviction was life in prison. *See Alleyne*, 570 U.S. at 112. He managed to negotiate a far lower limit; his plea agreement preserved the right to challenge "any sentence over 84 months with respect to" that charge. The district court respected that limit. Because King received a lesser sentence—one within the 84-month limit he had negotiated—the statutory-maximum exception of *Bushert* does not come into play. As in *Johnson*, we will not stretch that exception beyond what it can reasonably bear.

Nor would it benefit defendants in the long run if we were to do so. Forcing constitutional claims into the statutory-maximum exception would render the promise of waiver virtually meaningless, robbing defendants of a powerful bargaining tool. Defendants who agree to waive their appeals receive the immediate benefit of reduced penalties in return—as King's case shows. But if that waiver becomes contingent, whether the defendant wishes it to be or not, a bargain will be much harder to strike.

We are not the only circuit court to recognize the value of enforcing appeal waivers against claims based on new constitutional rules. To the contrary, the "principle that future changes in law do not vitiate collateral-challenge waivers is mainstream." *Portis v. United States*, 33 F.4th 331, 335 (6th Cir.

2022). Two of our sister circuits have recently held that such waivers prohibit § 2255 motions based on *Davis*. The Seventh Circuit explained that a *Davis* challenge did not "satisfy any of [its] recognized bases for avoiding a valid collateral-attack waiver," including a statutory-maximum exception. *Oliver*, 951 F.3d at 844–45. And the Sixth Circuit interpreted an explicit carve-out in an appeal waiver for sentences exceeding "the statutory maximum" to refer to "the maximum sentence at the time of sentencing, not to maximum sentences throughout a defendant's prison term based on future changes to the law." *Portis*, 33 F.4th at 339.

King points out, and we acknowledge, that not all circuits have consistently followed this approach. *See United States v. Cornette*, 932 F.3d 204, 210 (4th Cir. 2019) (expanding a statutory-maximum exception to cover *Johnson* claims); *Vowell v. United States*, 938 F.3d 260, 268 (6th Cir. 2019) (same); *United States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016) (holding that an appeal waiver will not bar a challenge to an "illegal" sentence). But circuits that once considered arguments like King's have changed course in later decisions involving *Davis* claims—decisions that support our understanding of appeal waivers. The Sixth Circuit recently distinguished an earlier panel decision suggesting an expansive view of the statutory-maximum exception. *See Portis*, 33 F.4th at 338–39. And the Ninth Circuit similarly declined to extend an established exception, noting that while "there always remains a chance the law could change in the defendant's favor," when that defendant signs an appeal waiver, he "knowingly and

voluntarily assumes that risk because he receives a presumably favorable deal under existing law." *United States v. Goodall*, 21 F.4th 555, 563–64 (9th Cir. 2021). We agree. And to the extent that other jurisdictions are willing to ignore a defendant's voluntary choice to sign an appeal waiver simply because the law has changed, we find their reasoning unpersuasive.

★    ★    ★

But for a few narrow exceptions, a defendant that waives the right to collaterally attack his sentence is bound by that decision. King's *Davis* claim is no exception. We therefore **AFFIRM** the district court's order.

20-14100                ANDERSON, J., concurring                1

ANDERSON, Circuit Judge, concurring:

I concur in the result reached in the opinion for the Court in this case. In *United States v. Bushert*, this Court held that collateral-attack waivers that defendants "knowingly and voluntarily" enter are enforceable. 997 F.2d 1343, 1345 (11th Cir. 1993). King's plea agreement contained a collateral-attack waiver, and he affirmed that he understood the rights he was waiving during his plea colloquy. However, he argues that this waiver does not bar his appeal because, after the Supreme Court held that the residual clause of 28 U.S.C. § 924(c) was void for vagueness in *United States v. Davis*, 139 S. Ct. 2319 (2019), he is serving a sentence beyond the statutory maximum allowed for his illegal § 924(c) conviction.

In *Bushert*, we acknowledged—in *dicta*—that a waiver might not bar a defendant's collateral attack when (1) the court sentences the defendant based on his race, religion, or other invidious classification or (2) it "impose[s] a penalty for a crime beyond that which is authorized by statute." 997 F.2d at 1350 n.18. I agree with the opinion for the Court that the second *Bushert* exception—*i.e.*, the statutory-maximum exception—cannot provide King relief because it only allows defendants to challenge sentences that exceed the maximum statutory penalty in effect at the time of sentencing. As the opinion for the Court explains, King's 84-month sentence for his § 924(c) conviction did not exceed the maximum sentence authorized by § 924(c) as it existed at the time of his sentencing. Accordingly, the statutory-maximum

2                    ANDERSON, J., concurring                    20-14100

exception does not allow King to circumvent his collateral-attack waiver.  I agree that later developments in the law typically do not obviate a collateral-attack waiver.

I write separately to address King's argument that a miscarriage-of-justice/actual innocence exception would allow King to challenge his § 924(c) sentence despite his collateral-attack waiver.  *See, e.g., United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) ("Waivers of appeals, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice."); *United States v. Andis*, 333 F.3d 886, 891–92 (8th Cir. 2003) (en banc) ("As the miscarriage of justice exception relates to [this] appeal, we reaffirm that in this Circuit a defendant has the right to appeal an illegal sentence, even though there exists an otherwise valid waiver.").  The opinion for the Court notes that we have never adopted a general "miscarriage of justice" exception.  But assuming *arguendo* that this Court would adopt a miscarriage-of-justice exception, I conclude that it would not apply here.  King admitted at his plea colloquy to robbing a bank while possessing and brandishing a firearm.  The Government originally indicted King on three counts: (1) conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951; (2) armed bank robbery in violation of §§ 2113(a), (d); and (3) use of a firearm during and in relation to a crime of violence in violation of § 924(c).  The parties negotiated a plea, and King pled guilty to a two-count information for (1) conspiracy to commit bank robbery in violation of 18 U.S.C.

20-14100                ANDERSON, J., concurring                3

§ 371 and (2) use of a firearm during and in relation to a crime of violence in violation of § 924(c).

The "crime of violence" predicate for the § 924(c) firearm charge was the § 371 conspiracy charge, which qualified at that time as a "crime of violence" under § 924(c)'s "residual clause."[1] The Supreme Court recently held that § 924(c)'s "residual clause" is unconstitutionally vague, *Davis*, 139 S. Ct. at 2325–36, but *Davis*'s holding does not mean that King is actually innocent of his § 924(c) firearms conviction. He admitted at his plea colloquy that he participated in armed bank robbery, and the Government could have used the armed bank robbery charge from King's original indictment as the predicate offense for the § 924(c) firearms charge. Even after *Davis*, the armed bank robbery charge would have served as a predicate "crime of violence" offense under § 924(c)'s elements clause.

---

[1] Section 924(c)(3) defines "crime of violence" as follows:

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first definition in § 924(c)(3)(A) is the "elements clause" whereas the second definition in § 924(c)(3)(B) is the "residual clause." *Davis*, 139 S. Ct. at 2324.

In my view, the contours of a miscarriage-of-justice exception to the enforceability of a collateral-attack waiver would closely track—if not mirror—the actual innocence exception to the procedural default rule. *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998) (stating that a petitioner's appeal may proceed despite procedural default if he can show his actual innocence); *Lewis v. Peterson*, 329 F.3d 934, 936–37 (7th Cir. 2003) (stating that, to satisfy the actual-innocence exception to procedural default, a petitioner must show his actual innocence both of the crime of which he was convicted and of any more, or equally, serious charges the Government dropped in the course of plea bargaining). Here, King clearly cannot show he is actually innocent of the foregone armed bank robbery charge because he admitted to doing so during his plea colloquy. Therefore, our conclusion that the collateral-attack waiver bars King's appeal would not cause a miscarriage of justice. Accordingly, I concur in the judgment reached in the opinion for the Court.