[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11700

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

*versus*

STEVENSON CHARLES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20596-PCH-1

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and LUCK, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a defendant may waive a statutory maximum term of supervised release over the government's objection. Stevenson Charles pleaded guilty to a 17-count indictment after he engaged in a crime spree targeting gay men in Miami. The district court sentenced Charles to 45 years of imprisonment and 15 years of supervised release. But the statutory maximum term for Charles's supervised release is five years. Because the district court lacked the authority to impose a sentence that exceeds the statutory maximum punishment, we vacate and remand for resentencing.

## I. BACKGROUND

Stevenson Charles, while on probation, engaged in a spree of violent crimes against gay men in Miami, Florida. On three separate occasions, Charles lured his victims to purported dates using the online dating application Grindr. When the victims arrived, he brandished a firearm, forced the victims into their cars, and directed them to banks or stores where he used their access cards or accounts to withdraw hundreds of dollars or to purchase gift cards. Charles beat one of the victims and shot another "multiple times, including in the back, shoulder, and head." He told one of his victims that he would "kill all of you/kill everyone like you," and told another that "he hated gay people" and "believed they should be punished."

A federal grand jury indicted Charles on 17 counts: three counts for carjacking, 18 U.S.C. § 2119(1)–(2); five counts for brandishing or brandishing and discharging a firearm in furtherance of a crime of violence, *id.* § 924(c)(1)(A)(ii)–(iii); five counts for kidnapping, *id.* § 1201(a)(1); and four counts for bank robbery, *id.* § 2113(a) and (d). Charles pleaded guilty to all 17 counts without a plea agreement.

The presentence investigation report calculated Charles's offense level to be 43. His criminal history score was five. The report also described several mitigating factors in Charles's personal and family history. Based on this information and the statutory maximums for Charles's 17 counts, Charles's guideline imprisonment range was a term of life. The report also stated that the supervised release range for counts one and six was "not more than three years, 18 U.S.C. § 3583(b)(2)" and for the remaining counts was "not more than five years, 18 U.S.C. § 3583(b)(1)." Five years was the maximum term for supervised release because, the report explained, "[m]ultiple terms of supervised release shall run concurrently." Charles filed no objections to the presentence investigation report, but he moved for a downward variance based on his age— he was 21 when he committed these offenses—and his difficult upbringing. Charles asked for the mandatory minimum sentence of 38 years of imprisonment.

At sentencing, the government recommended life in prison, in accord with the guideline range. The government argued that Charles was "a danger to th[e] community" based on his criminal

history, failed attempts at rehabilitation, and the violence of these crimes. The district court expressed concern that Charles's actions constituted "probably as violent or as vicious a series of criminal acts" as he had seen in "20-something years" and that it did not "see any remorse" from Charles.

Charles again requested a downward variance to the mandatory minimum term of imprisonment. The defense contended that Charles's relative youth and the circumstances of his upbringing "in some of the worst neighborhoods in Miami" counseled against life in prison. The district court repeatedly expressed concern both that the violence of the crimes and Charles's lack of remorse suggested that he would engage in similar conduct if he were ever released from prison but that his youth and background made life in prison a harsh sentence.

As it attempted to balance these concerns, the district court proposed a compromise. First, the judge asked, "I know the maximum period of . . . supervised release . . . is five years. Is there any path to have it longer than that? Can it be stipulated to, if the defendant agrees to it as part of his sentence?" The government responded that it did not believe that the district court could increase the period of supervised release because the five-year maximum was statutorily provided. The court pressed, "is that something I can do legally? . . . I know the statute says it's a maximum of five. But if the defendant says I waive the maximum and would agree to ten years instead, I['ve] never had that come up." The government responded, "I don't believe the defendant can waive a maximum

term." Defense counsel opined that "the defendant can waive anything," and then offered, "we'd agree to 15 years supervised release."

The district court imposed a sentence of 45 years of imprisonment and 15 years of supervised release. It explained that the 15-year term of supervised release "is acknowledged to be in excess of the statutory maximum, but based on . . . the defendant's stipulation to this 15 years, I have reduced his sentence down from life to the 45 years [of imprisonment]."

Charles did not object to the sentence, but the government objected to "the imposition of the 15 year . . . supervised release because it exceeds the statutory maximum." The government explained that the illegality of the term of supervised release would make the sentence inadequate:

> Your Honor said you reduced the sentence of imprisonment based on the fact that you were giving a longer term of supervised release. So assuming a court later finds that a five-year maximum is all that he can serve, that would concern the Government that Your Honor was basing your sentence based on the maximum of supervised release—term of supervised release being longer.

The district court entered its judgment on the same day as the hearing. The judgment included a footnote that stated, "The Court acknowledges that fifteen (15) years of supervised release exceeds the statutory limit; however, the defendant stipulated to this increased term of supervised release in lieu of additional time in

prison." The district court later entered an amended judgment to include restitution.

## II. STANDARD OF REVIEW

We review the legality of a criminal sentence *de novo*. *United States v. Cobbs*, 967 F.2d 1555, 1556 (11th Cir. 1992).

## III. DISCUSSION

As a preliminary matter, Charles argues that the government failed to object to his term of imprisonment in the district court and failed to raise any issue with that term on appeal. We disagree. The government objected that the legal error in Charles's term of supervised release infected his entire sentence. On appeal, the government raises the same argument.

The government argues that the district court erred by imposing an illegal sentence because Charles's 15-year term of supervised release exceeds the statutory maximum punishment. *See* 18 U.S.C. § 3742(b)(1) (allowing the government to appeal an illegal sentence). The government also contends that statutory maximums are not waivable, so Charles's stipulation to a longer term of supervised release has no effect on the legality of his sentence. We agree with the government.

Illegal sentences include those "beyond the statutory power of the court to impose." *Cobbs*, 967 F.2d at 1558. Both the Supreme Court and this Court have explained that district courts may not sentence a defendant beyond what "the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980); *see also United*

*States v. Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993); *King v. United States*, 41 F.4th 1363, 1369 (11th Cir. 2022) (describing a statutory maximum as "one of the fundamental and immutable legal landmarks within which the district court must operate" (citation and internal quotation marks omitted)). This limit on judicial authority is absolute.

Although defendants may sometimes waive their rights in a criminal proceeding, a statutory maximum punishment is not waivable. A defendant's waivable rights *belong* to the defendant, and he may choose to exercise them or not. For example, the right to counsel, though constitutionally protected, is the defendant's to waive. *See United States v. Hakim*, 30 F.4th 1310, 1321–23 (11th Cir. 2022). If a defendant chooses to waive his right to counsel, the scope of the *court's* power does not change. *Cf. id.* at 1322 (describing how waiver impacts the defendant's rights with no discussion of the court's authority). Statutory maximums are not "rights." They are *limits* imposed by *Congress* on the punishment a court may impose.

Charles argues that neither *United States v. DiFrancesco* nor *United States v. Bushert* held that a sentence that exceeds a statutory maximum is a "jurisdictional defect" because *DiFrancesco* concerned a double jeopardy challenge and *Bushert* concerned an appeal waiver. But both precedents confirm the importance of statutory limits on punishments, and both suggest that congressional authority is the key difference that makes a sentence legal or illegal. *See DiFrancesco*, 449 U.S. at 139 (describing congressional

authorization of more than one punishment as the defining feature that avoided a double jeopardy violation); *Bushert*, 997 F.2d at 1350 n.18 ("It is both axiomatic and jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute.").

Neither of the invited-error precedents that Charles cites suggests that a defendant may waive a statutory maximum punishment. In *United States v. Love*, the defendant had "repeatedly requested the court impose a sentence of time served followed by a term of supervised release." 449 F.3d 1154, 1155 (11th Cir. 2006). The district court sentenced the defendant to "45 days' incarceration followed by five years of supervised release." *Id.* at 1155–56. On appeal, the defendant argued that the district court lacked the authority to impose his term of supervised release. *Id.* at 1156. We did not reach the merits of that argument. *Id.* at 1157. Instead, we concluded that the defendant "induced or invited the ruling" and stated that "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited *by that party*." *Id.* (emphasis added) (citation and internal quotation marks omitted). And, in *United States v. Carpenter*, the defendant requested a downward variance in his term of imprisonment followed by "lifetime supervised release." 803 F.3d 1224, 1231 (11th Cir. 2015) (internal quotation marks omitted). After the district court sentenced the defendant at the bottom of the guideline range and "imposed a life term of supervised release," *id.* at 1231–32, and the defendant challenged his term of supervised release on appeal, *id.* at 1236, we applied the invited error rule: "[t]he invited error

doctrine stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal," *id.* (citation and internal quotation marks omitted). But the invited error rule has no application when, as here, an *opposing* party invites the error.

Charles's crimes carry a five-year statutory maximum term of supervised release. He pleaded guilty to a mix of Class A, B, and C felonies. *See* 18 U.S.C. § 3559(a) (defining classes of felonies); *id.* § 2119(1)–(2); *id.* § 924(c)(1)(A)(ii)–(iii); *id.* § 1201(a)(1); *id.* § 2113(a), (d). None of his crimes specified a term of supervised release, so that term is supplied by section 3583(b). Class A and B felonies carry a five-year maximum term of supervised release, and Class C felonies carry a three-year maximum term. *Id.* § 3583(b)(1)–(2). Terms of supervised release run concurrently. *Id.* § 3624(e). Although Charles argues that his "waiver" of this maximum eliminated any legal error in his sentence, he was not entitled to waive the statutory maximum. So the district court imposed an illegal sentence when it sentenced Charles to 15 years of supervised release.

That error permeated Charles's entire sentence. "'A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent.'" *Pepper v. United States*, 562 U.S. 476, 507 (2011) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)). "Because a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court . . . may vacate the entire sentence so that, on

remand, the trial court can reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* (alterations adopted) (citations and internal quotation marks omitted); *accord Andrews v. Warden*, 958 F.3d 1072, 1080 (11th Cir. 2020) ("[A] 'sentence' refers to the full panoply of punishments imposed for a crime . . . ."); *see also United States v. Gonzalez*, 541 F.3d 1250, 1256–57 (11th Cir. 2008) (vacating the entirety of a sentence based on an error in one part and remanding for a full resentencing). The district court tied its decision to reduce Charles's prison time—from the guideline range of life in prison to 45 years in prison—to Charles's stipulation to a term of 15 years of supervised release. On remand, the district court must have the opportunity to impose a new sentence that considers the statutory sentencing factors without relying on an illegal term of supervised release.

## IV. CONCLUSION

We **VACATE** Charles's sentence and **REMAND** for resentencing.