**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12476

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

BRIAN DUBLYNN,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20583-AHS-2

————————————

Before JORDAN, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Brian Dublynn appeals a preliminary order of forfeiture granting the government permission to seize his Fort Lauderdale home as a substitute asset. He maintains that under the terms of

his plea agreement he agreed to forfeit only certain funds used to purchase his home, not the home itself.  He further argues that the government failed to satisfy the requirements of the substitute forfeiture statute.  The government in turn moves to dismiss Dublynn's appeal pursuant to the sentence-appeal waiver in Dublynn's plea agreement.  We initially carried the government's motion to dismiss with the case.  Having reviewed the record, we agree that Dublynn's forfeiture challenge falls within the scope of the appeal waiver.  Accordingly, we grant the government's motion to dismiss.

## I.    Background

A grand jury indicted Dublynn and several co-conspirators for various crimes relating to a health care fraud and wire fraud scheme involving Safe Haven Recovery, Inc. ("Safe Haven"), a corporation that operated a substance abuse treatment center. Dublynn was Safe Haven's Vice President.  According to the Indictment, Safe Haven billed patients for substance abuse treatment that was either not provided or not medically necessary, and it billed for urine tests that were medically unnecessary.  The indictment further alleged that certain property was subject to forfeiture as a result of the alleged offenses, including "real property located at 1417 NE 17th Street, Ft. Lauderdale[,] Florida 33305."

Dublynn entered into a written plea agreement in which he agreed to plead guilty to one count of conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349.  In

exchange the government agreed to dismiss the remaining eleven counts against him.  The plea agreement contained the following sentence-appeal waiver:

> [T]he Defendant hereby waives all rights conferred by [18 U.S.C.] Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted [by] statute or is the result of an upward departure from the guideline range that the Court establishes at sentencing.  The Defendant further understands that nothing in this Agreement shall affect the Government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the Defendant's sentence pursuant to Section 3742(b), the Defendant shall be released from the above waiver of appellate rights.  By signing this agreement, the Defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney.  The Defendant further agrees, together with the United States, to request that the district court enter a specific finding that the Defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

With regard to forfeiture, the plea agreement provided that Dublynn agreed:

> to forfeit to the United States voluntarily and immediately all property, real or personal, that

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense in violation of 18 U.S.C. § 1349, to which the Defendant is pleading guilty, pursuant to 18 U.S.C. § 982(a)(7). In addition, the Defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The property subject to forfeiture includes, but is not limited to:

(i)    A forfeiture money judgment in the amount of approximately $9,400,000.00, which represents the total amount of gross proceeds obtained as a result of violation of Title 18, United States Code, Section 1349, as alleged in the Indictment.

(ii)    Directly forfeitable property including, but not limited to:

a.  Safe Haven derived funds used to purchase the real property located at 1417 NE 17th Street, Ft. Lauderdale, Florida 33305

. . . .

Defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, Defendant agrees to waive . . . the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

Finally, the plea agreement stated that, by signing the agreement, Dublynn acknowledged that he had reviewed every part of the agreement with his attorney and understood it, and that Dublynn's attorney, by signing the agreement, agreed that he had reviewed the agreement with Dublynn. Dublynn and his attorney both signed the agreement.

The next day, the government moved to amend the plea agreement because it had mistakenly referred to the "Indictment," rather than the "Superseding Indictment" in the original plea agreement. Other than replacing references to the "Indictment" with "Superseding Indictment," the government represented that the amended plea agreement remained the same as the original. Dublynn filed a notice of non-objection, and the district court granted the motion.

However, unbeknownst to Dublynn, the amended plea agreement also omitted certain language in the description of directly forfeitable property. Specifically, whereas the original agreement stated that the directly forfeitable property "include[d], but [was] not limited to . . . Safe Haven derived funds used to purchase the real property located at 1417 NE 17th Street, Ft. Lauderdale, Florida 33305[,]" the amended agreement omitted the phrase "Safe Haven derived funds used to purchase" and simply referred to the real property as directly forfeitable. The government subsequently acknowledged this error and agreed that it was "bound by the forfeiture provisions in the original Plea Agreement . . . rather than the Amended Plea Agreement . . . .

The changes made to the forfeiture paragraphs of the Amended Plea Agreement were an inadvertent drafting error."[1]

The government thereafter moved for a preliminary order of forfeiture, seeking a forfeiture money judgment in the amount of $9,400,000.00 and the forfeiture of certain substitute property in satisfaction of that judgment. Specifically, the government sought forfeiture of Dublynn's Fort Lauderdale property and two other pieces of property as substitute assets. As relevant to this appeal, the government asserted that it had "not been able to locate all of the directly forfeitable property," and funds from the unlawful scheme had been commingled with other funds to purchase the Fort Lauderdale property, making it a proper substitute asset.[2]

Dublynn opposed the government's forfeiture request of the Fort Lauderdale property, arguing, in relevant part, that the government could not seek forfeiture of substitute assets in an amount greater than what Dublynn personally received from the conspiracy, and it could not seek forfeiture of the Fort Lauderdale property because the original plea agreement listed only Safe Haven-derived funds used to purchase the property as directly forfeitable property.

---

[1] Although Dublynn makes much of this drafting error in his briefing on appeal, the government again concedes on appeal that the language from the original plea agreement controls.

[2] The government submitted an affidavit from the FBI to establish the unavailability of directly forfeitable property in support of its motion.

The government replied, in relevant part, that as part of the plea agreement, Dublynn agreed to a $9.4 million forfeiture judgment and expressly agreed that when directly forfeitable property was not available, the government may pursue the forfeiture of substitute property.

At sentencing, the district court reserved ruling on the forfeiture dispute and sentenced Dublynn to 42 months' imprisonment. Thereafter, the government filed an amended motion for a preliminary order of forfeiture, again seeking permission to seize the Fort Lauderdale property as a substitute asset. Dublynn did not file a response. The district court granted the motion and entered a preliminary order of forfeiture authorizing the government to seize the Fort Lauderdale property as a substitute asset. This appeal followed.

## II.    Discussion

Dublynn seeks to challenge the forfeiture order arguing that the forfeiture of his Fort Lauderdale home "is outside the terms of the plea agreement because [he] only agreed to forfeiture of 'Safe Haven derived funds' used to purchase the home." He maintains that only $144,000 of Safe Haven derived funds were used to purchase the home, and therefore forfeiture of the entire property "explicitly contradicts" the terms of the plea agreement and is not covered by the appeal waiver. Moreover, he argues that the sentence-appeal waiver is not valid and enforceable because the district court did not expressly discuss forfeiture when discussing the sentence- appeal waiver, and it is not manifestly clear from the

record that he understood the significance of the waiver. Alternatively, Dublynn argues, in passing, that even if the appeal waiver is valid, the district court violated his due process rights by failing to hold a forfeiture hearing as required by Federal Rule of Criminal Procedure 32.2(b)(1)(B), and we should remand for a hearing. We address each point in turn.

We begin with Dublynn's allegations that the government's actions in seeking forfeiture of the home "expressly contradicts" the terms of the plea agreement. To the extent that Dublynn's argument could be construed as alleging that the government breached the plea agreement, his appeal waiver would not bar a breach claim. *See United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016) (explaining that "an appeal waiver does not bar a defendant's claim that the government breached the plea agreement").

Ordinarily, "we review de novo whether the government has breached a plea agreement." *United States v. Malone*, 51 F.4th 1311, 1318 (11th Cir. 2022). When, however, as here, a defendant fails to raise a breach of plea agreement objection before the district court, we review only for plain error. *Id.* Plain error occurs where: (1) there is an error; (2) "that is plain"; and (3) it "affects [the defendant's] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alteration adopted) (quotations omitted). "If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

*Id.* (quotations omitted). In other words, "plain error review should be exercised sparingly, and only in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotations and citation omitted).

"[I]n determining whether the government has breached a plea agreement, we must first determine the scope of the government's promises." *Malone*, 51 F.4th at 1319 (quotations omitted). To determine the scope of such promises, we look to the terms of the plea agreement, and the "unambiguous meaning [of those terms] controls." *Id.* Using an objective standard, "we ask whether the government's conduct conflicted with the defendant's reasonable understanding of the government's promises when he entered his guilty plea." *Id.* A breach exists where the government "fails to perform the promises on which the plea was based." *Id.* (quotations omitted).

Here, Dublynn can show no error, much less plain error, occurred. The controlling language in the original plea agreement provided that Dublynn agreed:

> to forfeit to the United States voluntarily and immediately all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense in violation of 18 U.S.C. § 1349, to which the Defendant is pleading guilty, pursuant to 18 U.S.C. § 982(a)(7). *In addition, the Defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).* The

property subject to forfeiture includes, but is not limited to:

(i)    A forfeiture money judgment in the amount of approximately $9,400,000.00, which represents the total amount of gross proceeds obtained as a result of violation of Title 18, United States Code, Section 1349, as alleged in the Indictment.

(ii)    Directly forfeitable property including, but not limited to:

a.    Safe Haven derived funds used to purchase the real property located at 1417 NE 17th Street, Ft. Lauderdale, Florida 33305

(emphasis added).    Dublynn maintains that the government is "bound by the language in the plea agreement" under which he "agree[d] [only] that 'Safe Haven derived funds used to purchase' the Ft. Lauderdale house [were] directly forfeitable property." The problem for Dublynn, which he later concedes in his brief, is that the government did not seek the house via direct forfeiture, nor did the district court order direct forfeiture of the property.   Rather, the government sought the house as a substitute asset under 21 U.S.C. § 853(p) in an effort to fulfill the $9.4 million forfeiture judgment.[3]    And Dublynn expressly agreed to the $9.4 million

---

[3] Where directly forfeitable property is unavailable, § 853(p) authorizes the forfeiture of substitute assets to satisfy a money forfeiture judgment.  *See* 21 U.S.C. § 853(p).

forfeiture judgment and to substitute forfeiture under § 853(p) as part of the plea agreement, and he does not argue otherwise on appeal. The plea agreement did not contain any restrictions on what assets could be pursued via substitute forfeiture. Indeed, Dublynn admits that the government is "absolutely right" that it could "seek forfeiture of the entire home without violating the plea agreement." He does not argue that the government breached the plea agreement by pursuing substitute forfeiture. Instead, he argues that the district court erred in determining that the government satisfied the requirements of § 853(p). That argument, however, goes to the merits of the district court's forfeiture decision and is not related to the question of whether the government breached the plea agreement. Accordingly, for the reasons set forth above, Dublynn cannot show that the government breached the terms of the original plea agreement when it sought forfeiture of his home as a substitute asset.

Having determined that there was no breach of the plea agreement, we turn to the government's argument that Dublynn's challenge to the forfeiture order is barred by the appeal waiver in his plea agreement. If an appeal waiver is valid, we will enforce it because, like the defendant, the government is entitled to the benefit it bargained for, and a court's refusal to enforce a waiver as written would "upset significant reliance interests" for both parties. *King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022).

"We review the validity of a sentence appeal waiver de novo." *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).

An appeal waiver will be enforced if it was made knowingly and voluntarily.  *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006); *United States v. Bushert*, 997 F.2d 1343, 1350–51 (11th Cir. 1993).  To demonstrate that a waiver was made knowingly and voluntarily, the government must show that either (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) it is "manifestly clear from the record" that the defendant otherwise understood the full significance of the waiver.  *Bushert*, 997 F.2d at 1351.

Appeal waivers bar "not only . . . frivolous claims, but also . . . difficult and debatable legal issues."  *King*, 41 F.4th at 1367 (quotations omitted).  Thus, a defendant who knowingly and voluntarily enters a sentence-appeal waiver "gives up even the right to appeal blatant error, because the waiver would be nearly meaningless if it included only those appeals that border on the frivolous."  *Id.* (quotations omitted).

Here, Dublynn waived his right to appeal his sentence, including the forfeiture of property, by knowingly and voluntarily entering an appeal waiver as part of his plea agreement.  *See Bushert*, 997 F.2d at 1351.  Specifically, he signed the plea agreement which contained an explicit sentence-appeal waiver.  The district court then advised Dublynn during the plea colloquy that he was waiving the right to appeal except in certain narrowly specified situations, and Dublynn stated that he understood.  *Bushert*, 997 F.2d at 1351; *United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020) (explaining that "the touchstone for assessing [whether an appeal

waiver was knowing and voluntary] is whether it was clearly conveyed to the defendant that he was giving up his right to appeal under most circumstances" (alterations adopted) (quotations omitted)).

Dublynn argues that we should not enforce the appeal waiver because the district court failed to explicitly discuss forfeiture as part of the waiver at the change-of-plea hearing, and the record is not clear that he understood that he was waiving his right to challenge forfeiture. We disagree. It is well-established that criminal forfeiture is part of the defendant's sentence. *See Libretti v. United States*, 516 U.S. 29, 38–39 (1995) ("Forfeiture is an element of the sentence imposed following conviction or, as here, a plea of guilty. . . ." (emphasis omitted)); *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 567 (1983) (noting that "criminal proceeding[s] . . . may often include forfeiture as part of the sentence").[4] Moreover, Dublynn's plea

---

[4] Dublynn acknowledges that our case law provides that "forfeiture is part of a sentence and thus is covered by a sentence-appeal waiver." Yet, he argues that his case is distinguishable because he claims that he was not aware at the time he entered the plea that forfeiture was covered by the appeal waiver. Instead, he maintains that his case is akin to our unpublished decision in *United States v. Charlemagne*, 774 F. App'x 632 (11th Cir. 2019), and compels the conclusion that the waiver should not be enforced in this case. His reliance on *Charlemagne* is misplaced. First, *Charlemagne* is an unpublished decision and is therefore not binding precedent. *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) ("Unpublished opinions are not binding precedent."). Second, *Charlemagne* is distinguishable. In that case, the plea agreement itself was silent as to forfeiture and—without any discussion of the Supreme Court precedent establishing that forfeiture is a part of a defendant's sentence—we concluded

14                  Opinion of the Court                  24-12476

agreement unambiguously stated that he waived "any appeal of the forfeiture," and he testified that he read, understood, and discussed this agreement with his attorney. *See United States v. Weaver*, 275 F.3d 1320, 1323–24, 1333 (11th Cir. 2001) (holding a waiver enforceable where the defendant claimed to understand it during the plea colloquy, confirmed that she had read the plea agreement and knew it was binding, and entered into the plea agreement freely and voluntarily). Thus, it is clear from the record that the waiver was knowingly and voluntarily entered and is therefore valid and enforceable. *Bascomb*, 451 F.3d at 1294; *Bushert*, 997 F.2d at 1350–51. The fact that Dublynn believes the district court committed blatant legal error in determining that the government satisfied § 853(p) and ordering forfeiture of the Fort Lauderdale property as a substitute asset does not fall within any of the exceptions to the waiver and is insufficient to overcome the waiver. *King*, 41 F.4th at 1367.

Finally, Dublynn argues that, even if the waiver is enforceable, the district court violated his due process rights by failing to hold a forfeiture hearing before ordering forfeiture as

---

that, given the agreement's silence regarding forfeiture, it was not "manifestly clear from the record" that the defendant understood that she was also waiving her right to appeal her forfeiture obligations. *Charlemagne*, 774 F. App'x at 635. Dublynn's plea agreement, however, unambiguously stated that Dublynn was waiving his right to "any appeal of the forfeiture." Thus, *Charlemagne* does not help Dublynn.

24-12476               Opinion of the Court                    15

required by Federal Rule of Criminal Procedure 32.2(b)(1)(B),[5] and this due process violation should be reviewable on appeal even if the appeal wavier is valid. We disagree for two reasons. First, Dublynn raised no due process claim in his initial brief on appeal. Thus, assuming without deciding that we could entertain such an exception to the appeal waiver, there is no due process claim properly before us to review. *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) (explaining that we do not "consider issues raised for the first time in an appellant's reply brief"). Second, even if such a claim was before the Court, it is without merit as Dublynn waived "the requirements of" Rule 32.2 as part of his plea agreement.

Accordingly, we **GRANT** the government's motion to dismiss pursuant to the sentence-appeal waiver.

**APPEAL DISMISSED.**

---

[5] Rule 32.2(b)(1)(B) provides that "[i]f the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." Fed. R. Crim. P. 32.2(b)(1)(B).